FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 19, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BEVERLY ANN A.,<br><br>                    Plaintiff,<br><br>     v.<br><br>KILOLO KIJAKAZI, COMMISSIONER OF SOCIAL SECURITY,<br><br>                    Defendant. | NO: 1:21-CV-03098-LRS<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 13, 15. This matter was submitted for consideration without oral argument. Plaintiff is represented by attorney Maren A. Bam. Defendant is represented by Special Assistant United States Attorney Justin L. Martin. The

ORDER - 1

1  Court, having reviewed the administrative record and the parties' briefing, is fully

2  informed.  For the reasons discussed below, Plaintiff's Motion, ECF No. 13, is

3  denied and Defendant's Motion, ECF No. 15, is granted.

## JURISDICTION

5  Beverly Ann A.[1] (Plaintiff) filed for disability insurance benefits on

6  December 30, 2014, and for supplemental security income on January 20, 2015,

7  alleging in both applications an onset date of November 1, 2014, which was later

8  amended to January 1, 2017.  Tr. 31, 66, 380-92.  Benefits were denied initially, Tr.

9  202-17, and upon reconsideration, Tr. 219-32.  Plaintiff appeared at a hearing before

10 an administrative law judge (ALJ) on November 2, 2017.  Tr. 1508-44.  On

11 November 21, 2017, the ALJ issued a fully favorable decision, Tr. 173-85, but on

12 June 17, 2018, the Appeals Council vacated the decision and remanded to the ALJ

13 because it determined the conclusions were not supported by substantial evidence.

14 Tr. 188-95.

15     On January April 8, 2020, Plaintiff appeared at a second hearing, Tr. 60-84,

16 and on July 27, 2020, a different ALJ issued an unfavorable decision.  Tr. 27-57.

17 The Appeals Council denied review.  Tr. 3-9.  The matter is now before this Court

18 pursuant to 42 U.S.C. § 405(g).

---

[1] The last initial of the claimant is used to protect privacy.

ORDER - 2

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was 41 years old at the time of the 2021 hearing. Tr. 66. She went to school through the tenth grade. Tr. 1514. She has work experience as a cashier, sorting apples, babysitting, and answering crisis calls. Tr. 1517-18. At the first hearing, Plaintiff testified that she has difficulty standing for a long time. Tr. 1518-19. She has pain in her lower back and her right side, going down her leg. Tr. 1519. She has abdominal pain. Tr. 1519-20. She has had two trigger finger surgeries on her left hand. Tr. 1522. Her fingers are going numb and tingling. Tr. 1521. She has pain in her thumb and is unable to hold things. Tr. 1521. She testified that she has difficulty with activities that require the use of both hands. Tr. 1522. She needs to lie down about three hours per day. Tr. 1522. Her right leg swells and she needs to elevate it for about 20 minutes every hour. Tr. 1522-23. She gets migraines about three times per week. Tr. 1525. She has asthma and glaucoma is suspected. Tr. 1525, 1532.

Plaintiff also testified she has depression and anxiety and gets panic attacks three times or more per week. Tr. 1524. She rarely goes shopping because she has

difficulty being around people.  Tr. 1524.  She testified that she has difficulty concentrating.  Tr. 1527.

At the second hearing, she testified that her ability to work is limited because she has trouble walking from her apartment to her car due to her ankle.  Tr. 68.  When she puts her foot down, she gets pain in her lower back, and when she moves her hip, the pain radiates down her leg.  Tr. 69.  Standing or sitting for too long causes a burning, tingling sensation from her back to her leg.  Tr. 69-70.  She had trigger thumb release surgery on her left hand which helped, but she still has pain.  Tr. 70.  Her right hand is also painful.  Tr. 77.  She testified that asthma is a major problem.  Tr. 71-72.  She has migraines every other day.  Tr. 77.

She gets anxiety and cannot be around big crowds of people.  Tr. 73.  She has panic attacks.  Tr. 77.  She has difficulty concentrating.  Tr. 78.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).

ORDER - 4

In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must

ORDER - 5

be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a

ORDER - 6

person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the

ORDER - 7

claimant's age, education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff engaged in substantial gainful activity in September 2017, but there was a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity.  Tr. 34.  At step two, the ALJ found that Plaintiff has the following severe impairments: asthma; obesity; degenerative joint disease, right knee; degenerative disc disease, lumbar and thoracic spines; major depressive disorder; and posttraumatic stress disorder.  Tr. 34.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the

ORDER - 8

listed impairments. Tr. 36. The ALJ then found that Plaintiff has the residual functional capacity to perform sedentary work with the following additional limitations:

> The claimant is able to lift and/or carry 10 pounds occasionally and less than 10 pounds frequently. She can stand and/or walk about 2 hours in an 8-hour workday and can sit about 6 hours. She can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds. She can frequently kneel, crouch, and crawl. She can only have occasional exposure to extreme cold, excessive vibrations, hazardous machinery, unprotected heights, and irritants, such as; fumes, odors, dust, gases, and poorly ventilated areas. She is able to understand, remember, and carryout [sic] simple, routine instructions with only occasional changes in the work setting. She can have only brief and superficial interactions with the public.

Tr. 38.

At step four, the ALJ found that Plaintiff has no past relevant work. Tr. 46. At step five, after considering and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform such as escort vehicle driver, assembler, and document preparer. Tr. 47. Thus, the ALJ determined that Plaintiff has not been under a disability, as defined in the Social Security Act at any time from January 1, 2017, through the date of the decision. Tr. 48.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II and supplemental security income under

ORDER - 9

Title XVI of the Social Security Act.  ECF No. 13.  Plaintiff raises the following issue for review: whether the ALJ properly considered the medical opinion evidence.  ECF No. 13 at 2.

**DISCUSSION**

Plaintiff contends the ALJ failed to properly consider the opinions of Grey Sawyer, M.D., Ph.D., Kim Foley, LMHC, and Jenifer Schultz, Ph.D.  ECF No. 13 at 2.  There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).[2]

---

[2] For claims filed on or after March 27, 2017, the regulations changed the framework for evaluation of medical opinion evidence.  *Revisions to Rules*

ORDER - 10

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

Further, the opinion of an acceptable medical source, such as a physician or psychologist, is given more weight than that of an "other source." 20 C.F.R. §§ 404.1527, 416.927 (2012); *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). "Other sources" include nurse practitioners, physician assistants, therapists, teachers, social workers, spouses, and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d) (2013). However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work."

---

*Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.

ORDER - 11

*Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).  Pursuant to *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993), an ALJ must give reasons germane to "other source" testimony before discounting it.

**A.    Grey Sawyer, M.D., Ph.D.**

Dr. Sawyer examined Plaintiff and prepared a psychiatric evaluation in April 2015.  Tr. 704-11.  He diagnosed posttraumatic stress disorder and major depressive disorder, mild to moderate, without psychotic features.  Tr. 710.  Dr. Sawyer found that Plaintiff "will have difficulty" in every functional area, including difficulty performing simple and repetitive tasks; performing detailed and complex tasks; accepting instructions from supervisors; attempting to understand, carry out and remember complex and one or two-step directions; attempting to maintain effective social interactions with supervisors, coworkers, and the public; attempting to perform work activities on a consistent basis without special or additional instruction; attempting to sustain concentration and persist in work-related activity at a reasonable pace; attempting to maintain regular attendance; attempting to complete a normal workday or workweek without interruptions; and attempting to deal with the usual stresses encountered in the workplace.  Tr. 710-11.  The ALJ gave little weight to Dr. Sawyer's opinion.  T. 45.

First, the ALJ found that the limitations assessed were not substantially supported by Dr. Sawyer's exam findings.  Tr. 45.  A medical opinion may be rejected if it is unsupported by medical findings.  *Batson v. Comm'r of Soc. Sec.*

ORDER - 12

*Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  The ALJ referenced the findings of the Appeals Council which noted Plaintiff endorsed numerous symptoms of anxiety and depression to Dr. Sawyer and sobbed, at times hysterically, rocked in her chair, made very little eye contact, and had a difficult time being in the room with him.  Tr. 191, 705-06.  It was noted that despite the foregoing, the mental status exam findings showed Plaintiff was able to concentrate, her attention span was good, and her memory was intact.  Tr. 191, 707-09.  Furthermore, it was noted that the limitations assessed by Dr. Sawyer were vague, indicating that Plaintiff "will have difficulty" performing work-related mental activities which could mean any degree of limitation.  Tr. 192, 710-11.  An ALJ is not required to incorporate limitations phrased equivocally into the RFC.  *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (finding a physician's descriptions of the plaintiff's limitations "as 'limited' or 'fair' were not useful because they failed to specify functional limits").  This is a specific, legitimate reasons supported by substantial evidence.

Second, the ALJ found that the limitations assessed were inconsistent with the longitudinal treatment record.  Tr. 45.  An ALJ may discredit a physician's opinion which is unsupported by the record as a whole.  *Batson*, 359 F.3d at 1195.  The ALJ noted that the significantly abnormal behavioral observations indicated by Dr. Sawyer were not repeated in exams after January 1, 2017, the alleged onset date.  Tr. 42.  The ALJ observed that despite episodic depression and anxiety, Plaintiff typically presented with a normal, stable mood and affect.  Tr. 42 (citing *e.g.*, Tr.

ORDER - 13

812, 823, 830, 855, 864, 868, 872, 881, 892, 926, 945, 1061, 1063, 1092, 1098, 1202, 1370, 1373, 1380, 1496, 1505). This is a specific, legitimate reason supported by substantial evidence.

Plaintiff argues the ALJ's reasons are insufficiently explained. ECF No. 13 at 8. An ALJ may not reject the opinion of a treating or examining physician by merely stating, without more, that there is a lack of objective medical findings in the record to support or that it is inconsistent with other evidence in the record. *See Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). However, the ALJ was not required to specifically link all of the discussions of the evidence to the reasons for rejecting Dr. Sawyer's opinion. *See Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). All reasons discussed by the ALJ constitute "grounds invoked by the agency," *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947), or "reasons the ALJ assert[ed]," *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Here, the ALJ's discussion of the evidence is sufficient to show that substantial evidence supports the ALJ's conclusions.

Plaintiff contends the ALJ impermissibly considered psychiatric findings mentioned in exam notes for physical impairments such as foot pain, thumb pain, asthma, or snoring, but cites no authority supporting this proposition. ECF No. 13 at 10. As the ALJ pointed out, the record reflects that Plaintiff declined referrals for mental health treatment on multiple occasions and engaged in minimal treatment, especially after her alleged onset date, Tr. 42, so the mental health records are

ORDER - 14

limited. Plaintiff suggests this line of reasoning "effectively seeks to punish Plaintiff for failing to seek treatment," ECF No. 16 at 5, but it simply explains why the ALJ cited more records for visits related to physical impairment rather than mental impairments. Furthermore, it is well established that primary care physicians identify and treat the majority of Americans' psychiatric disorders. *Sprague*, 812 F.2d at 1232. Lastly, it is reasonable to infer that if Plaintiff's presentation in settings other than a consultative psychiatric examination is normal and stable, findings from the psychiatric exam may not be reflective of Plaintiff's functional ability over the course of the record.

Plaintiff also argues the ALJ "cherry-picked" evidence to support the ALJ's conclusions. ECF No. 13 at 10. Plaintiff contends that some of the treatment notes cited by the ALJ contained findings such as PHQ-9 scores of 20 and GAD-7 scores of 19, which Plaintiff contends are consistent with Dr. Sawyer's findings. ECF No. 13 at 10. However, the ALJ acknowledged the presence of "episodic depression and anxiety" in the cited records but noted that Plaintiff's presentation was still essentially normal. Tr. 42. Furthermore, PHQ-9 scores and GAD-7 scores are not functional assessments and are not evidence supporting any particular degree of limitation.

It is noted that a few of the records cited by the ALJ include mixed findings or abnormal mental status exam findings. Tr. 855 (8/11/15 - speech, behavior, judgment, thought content all normal; mood not anxious, affect not angry and not

ORDER - 15

inappropriate, normal cognition and memory, depressed mood); 860 (8/28/15 - review of systems indicates decreased concentration and agitation, nervous/anxious but she had a normal mood and affect, normal behavior, judgment, and thought content); 862 (10/1/15 – nervous/anxious, mood is sad and no insight); 1074 (8/15/17 - slightly flat affect, non-tangential speech, good eye contact and insight), 1156 (8/16/17 - affect anxious and tearful).  Three of these instances occurred before the alleged onset date, while the two August 2017 records occurred a day apart when Plaintiff was under the weather with a sore throat, runny nose, cough, and worsening asthma.  Tr. 1074, 1176.  These few mixed findings do not undermine the ALJ's evaluation of the longitudinal record.

Plaintiff recites the contents of Dr. Sawyer's report but does not cite any other records showing abnormal findings to demonstrate that the ALJ "cherry-picked" the longitudinal evidence.  ECF No. 13 at 11-12.  Plaintiff also cites opinions of other providers but does not challenge the weight assigned to them, except as discuss *infra*.  ECF No. 13 at 12-15.  Based on all of the foregoing, the ALJ provided specific, legitimate reasons supported by substantial evidence for giving little weight to Dr. Sawyer's opinion.

**B.    Kim Foley, LMHC, and Jenifer Schultz, Ph.D.**

In February 2008, Ms. Foley completed a DSHS "Documentation Request for Medical/Disability Condition" form and indicated that Plaintiff has "mental and emotional issues that require considerations to include safety + anxiety, PTSD."  Tr.

ORDER - 16

1  568-70.  She opined that Plaintiff was limited to working 11-20 hours per week and
2  could perform light work.  Tr. 568.

3      In November 2013, Dr. Schulz conducted a diagnostic interview, prepared a
4  report, and diagnosed posttraumatic stress disorder.  Tr. 643-46.  Dr. Schulz opined
5  that Plaintiff's ability to understand and reason is fair; her memory is adequate; her
6  social interaction is limited; she is impaired by her reluctance to leave the house; and
7  her ability to tolerate or adapt to stress is poor.  Tr. 646.

8      The ALJ noted that the opinions of Ms. Foley and Dr. Schulz are dated more
9  than two years (nine years and just over three years, respectively) before Plaintiff's
10 alleged onset date of January 1, 2017.  The ALJ concluded the opinions are not a
11 reliable source of information for the period starting January 1, 2017, due to their
12 remoteness in time and the inability of Ms. Foley or Dr. Schulz to review the
13 longitudinal record.  Tr. 46.  As a result, the ALJ did not consider the opinions and
14 found that, notwithstanding, there was sufficient objective medical evidence to make
15 the disability determination.  Tr. 46.

16     Plaintiff argues the ALJ improperly failed to consider these opinions.  ECF
17 No. 13 at 18.  Indeed, the regulations provide that "regardless of source," the Social
18 Security Administration "will evaluate every medical opinion [it] receive[s]."  20
19 C.F.R. §§ 404.1527(d), 416.927.  However, "[m]edical opinions that predate the
20 alleged onset of disability are of limited relevance." *Carmickle v. Comm'r of Soc.*
21 *Sec. Admin.*, 533 F.3d 1155,1165 (9th Cir. 2008) (citing *Fair v. Bowen,* 885 F.2d

ORDER - 17

597, 600 (9th Cir. 1989)).  Courts have affirmed an ALJ's rejection of a medical opinion predating the alleged onset of disability.  *See Gunderson v. Astrue*, 371 F. App'x 807, 809 (9th Cir. 2010) (citing *Carmickle* and finding the ALJ did not err when discounting the medical opinion of a doctor who conducted an exam "nearly two years before the alleged onset date of [Plaintiff's] disabilities"); *Fountaine v. Colvin*, No. 3:14-CV-05035-KLS, 2014 WL 4436989, at *5 (W.D. Wash. Sept. 8, 2014) (affirming ALJ's rejection of medical opinions offered three years before alleged onset date); *Wa Wei Chong v. Colvin*, No. CV 13-0226-DTB, 2014 WL 1407934, at *3 (C.D. Cal. Apr. 11, 2014) (finding medical opinion with more restrictive functional limitations was of limited probative value because it was offered over two years prior to the alleged onset date).

      Plaintiff cites a district court case for the proposition that while an opinion predating the claimant's alleged onset date may be of limited relevance, this does not mean that it has no relevance.  ECF No. 13 at 18 (citing *Karalee S. v. Comm'r*, 2:20-cv-01511-JRS (W.D. Wash. Oct 13, 2021)[3]).  However, it is reasonable to conclude that the greater the time between the date of an opinion and the alleged onset date, the less likely it is to provide any meaningful information about the period after the

---

[3] This case is not available on a publicly accessible electronic database and Plaintiff has not filed a copy of the case as an attachment in accordance with Local Civil Rule 7(g)(2).

ORDER - 18

alleged onset date.  The ALJ considered numerous other opinions made before the alleged onset date, Tr. 43-45, but closer in time to the alleged onset date.  Based on the circumstances of this case, the ALJ reasonably concluded that the opinions of Ms. Foley and Dr. Shultz were not relevant and did not err by failing to further address them.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error.

Accordingly,

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** September 19, 2023.

_____
LONNY R. SUKO
Senior United States District Judge

ORDER - 19